**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEFA FILGUEIRAS, *on behalf of herself and those similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>    Defendant. | Civil Action No.: 15-8144 (JLL) (SCM)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and comes before the Court by way of Defendant Portfolio Recovery Associates, LLC's ("PRA") Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 16.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part the Motion to Dismiss.

## FACTUAL BACKGROUND[1]

Plaintiff Josefa Filgueiras resides in Bergen County, New Jersey. (ECF No. 10, Amended Complaint ("Compl.") ¶ 4.) Defendant PRA is a debt collector located in Virginia who purchases defaulted consumer debts at a discount and then seeks to collect the full value of those unpaid

---

[1] This background is derived from Plaintiff's Complaint, and other documents that are integral to and/or explicitly relied upon in the Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

accounts. (*Id.* ¶¶ 5, 10.)

Plaintiff incurred or owed a certain financial obligation arising from an account originating from GE Money Bank – Walmart ("Debt" or "Account"). (*Id.* ¶ 14; *see id.* Ex. A.) The Debt arose from one or more transaction which were primarily for Plaintiff's personal, family, or household purposes. (*Id.* ¶ 15.) The parties dispute the nature of the Debt and the applicable statute of limitations. (*See* Part B.1.a, *infra*.)

Plaintiff made her last payment on the Account on August 16, 2009, and defaulted on the Account in September 2009. (*Id.* ¶¶ 25, 27.) The Account was charged off in March 2010, after the Debt had been in default for a period of approximately 180 days. (*Id.* ¶ 30.) PRA purchased the Account, at which point it was past-due and in default. (*Id.* ¶ 18.)

PRA mailed two collection letters to Plaintiff, the first on or about November 19, 2014 ("2014 Letter"), and the second on or about November 12, 2015 ("2015 Letter") (collectively "PRA Letters.") (*Id.* ¶ 32; *see id.* Ex. B.) The 2014 Letter includes three "Settlement Options" which purport to offer discounted repayment options, and states that "the savings percentage will be applied to the balance and your account will be considered 'settled in full' once your final payment is successfully posted." (*Id.* ¶ 36; *id.* Ex. B.) The 2015 Letter offers "Single Payment Savings" and states that "your account will be considered 'settled in full' after your payment is successfully posted." (*Id.* ¶ 37; *id.* Ex. B.) The 2015 further states that "[b]ecause of the age of your debt, we will not sue you for it." (*Id.* Ex. B.)

Plaintiff states that the PRA Letters failed to disclose: that the Debt was barred by the statute of limitations; the date of the transactions giving rise to the Debt; the date of default; and that the Debt is legally unenforceable in a court of law. (*Id.* ¶¶ 45-48.) Plaintiff alleges that the

2

PRA Letters falsely imply that the Account is legally enforceable and that the least sophisticated consumer would believe that PRA would later sue to collect on the debt. (*Id.* ¶¶ 49, 50.) According to Plaintiff, nothing in the PRA Letters disclosed the legal consequences of a settlement or a payment, in particular that it would restart the statute of limitations. (*Id.* ¶¶ 51, 52.) Plaintiff alleges that PRA's reference to "savings" in the PRA Letters is false because there are no "savings" when the statute of limitations acts a complete defense to collection of the Debt. (*Id.* ¶ 55.)

Plaintiff alleges that PRA engaged in unfair and deceptive acts and practices by sending letters, such as the PRA Letters, which attempt to settle time-barred debts without disclosing that the debts are time-barred, without disclosing that payment of the debt would restart the statute of limitations, and which falsely represent the benefits of the offers/options for payment. (*Id.* ¶ 57.) In essence, Plaintiff alleges that PRA violated the FDCPA by referencing a "settlement" in collection letters seeking repayment on time-barred debts. (*See id.* ¶ 79.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 18, 2015 with the filing of a proposed Class Action Complaint. (ECF No. 1.) PRA filed a Motion to Dismiss on December 28, 2015 (ECF No. 7), which was denied as moot after Plaintiff filed an Amended Complaint on January 18, 2016. (*See* ECF No. 11.)

In the one-count Amended Class Action Complaint, Plaintiff specifically alleges that the she is a "consumer," that the Debt is consumer "debt," that PRA is a "debt collector," and that the PRA Letters (and letters sent to other consumers which reference "settlement") are "communications," as defined by the FDCPA. (*Id.* ¶¶ 72, 74, 76, 77, 78.) Plaintiff alleges that by

3

sending numerous collection letters on time-barred debts that referenced a "settlement," PRA

violated sections 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f of the FDCPA.

(*Id.* ¶ 79.)  Plaintiff seeks statutory and actual damages, attorneys fees, and certification of a Class.[2]

On February 22, 2016, PRA filed the instant Motion to Dismiss the Amended Complaint.

(*See* ECF No. 22-1 ("Mov. Br.").)  On March 24, 2016, Plaintiff filed opposition (ECF No. 21

("Opp. Br.")), and on April 8, 2016, PRA filed a reply (ECF No. 24 ("Reply Br.")).  The matter is

now ripe for resolution.

---

[2] The proposed Class is initially defined as follows:

> All persons with an address within in the State of New Jersey to whom Defendant Portfolio Recovery Associates, LLC, sent one or more letter(s) in an attempt to collect a consumer debt which allegedly arose from a Walmart account issued by either Walmart, GE Money Bank or a related entity, which letter was dated from November 18, 2014 through the final resolution of this case, which letter contained one or more of the alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and:

> Four-year Class: where the last payment on the Walmart account, which use was limited to Walmart stores, was more than four years and 35 days before the date on which the letter was sent.

> Six-year Class: where the last payment on the Walmart account, which use was not limited to Walmart stores, was more than six years and 35 days before the date on which the letter was sent.

(*Id.* ¶ 59.)

## **LEGAL STANDARD**

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Stated differently, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515

F.3d 224, 233 (3d Cir. 2008) (internal citation and quotation marks omitted).  The Court's role is not to determine whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims."  *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011) (internal citation and quotation marks omitted).  The Court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## ANALYSIS

The Court first discusses the relevant standard under the FDCPA before turning to the PRA Letters at issue in this case.  The Court ultimately concludes that Plaintiff's FDCPA claim shall proceed to the extent it is premised on the 2014 Letter; on the other hand, allegations stemming from the 2015 Letter fail to plausibly state a claim for relief.

### A.  Relevant Standard Under the FDCPA

In this section, the Court determines that the Third Circuit's decision in *Huertas v. Galaxy Asset Management*, 641 F.3d 28 (3d Cir. 2011) does not entirely control in this case.  Although *Huertas* suggests that a "threat of litigation" is required to state a claim under the FDCPA relating to collection of a time-barred debt, the Court finds *Huertas* distinguishable because it did not address a "settlement offer" in connection with a time-barred debt.  The Court agrees that use of the term "settlement offer" in attempting to collect a time-barred debt could be deemed a misrepresentation of the legal status of the debt in the eyes of the least-sophisticated debtor, in violation of the FDCPA.

6

1.  FDCPA Background

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  When Congress passed the legislation in 1977, it found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and invasions of individual privacy." *Id.* § 1692(a).  "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013).  Accordingly, the Court must "analyze the communication giving rise to the FDCPA claim 'from the perspective of the least sophisticated debtor.'" *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).  "[W]hile the least sophisticated debtor standard protects naive consumers, 'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (citation omitted).  Here, Plaintiff has alleged all four elements (*see* Compl. ¶¶ 72, 74, 76,

7

77, 78), and PRA does not dispute the first three prongs.[3]   At issue is the fourth prong: whether PRA violated a provision of the FDCPA in attempting to collect the debt.

Plaintiff alleges that PRA violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f by sending numerous collection letters on time-barred debts that referenced a "settlement." (*See* Compl. ¶ 79.)  Section 1692f prohibits "unfair practices" and states in part that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  Meanwhile, section 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including: falsely representing "the character, amount, or legal status of any debt," *id.* § 1692e(2)(A), "threat[ening] to take any action that cannot legally be taken," *id.* § 1692e(5), or "us[ing] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10).

2. <u>Discussion of Relevant Case Law</u>

The case law is not settled on whether offering a "settlement" on a time-barred debt can give rise to liability under the FDCPA.  PRA relies heavily on the Third Circuit's 2011 *Huertas* decision in support of their motion to dismiss, while Plaintiff attempts to distinguish *Huertas* by relying on more recent decisions from the Seventh and Sixth Circuits.[4]

In *Huertas*, the pro-se plaintiff's claims were "primarily based upon . . . attempts to collect[] a 'false' debt, *i.e.*, a debt upon which the six-year statute of limitations had run under New

---

[3] Indeed, the PRA letters specifically disclose that the "communication[s] [are] from a debt collector and [are] an attempt to collect a debt." (*See* Compl. Ex. B.)

[4] It goes without saying that this Court must follow precedential decisions of the Third Circuit Court of Appeals, whereas decisions from other circuits are not binding, even though they may be instructive. *See Papaioannoiu v. Hellenic Lines, Ltd.*, 569 F. Supp. 724, 728-29 (E.D. Pa. 1983) ("While the decisions of Circuit Court panels outside the Third Circuit are ordinarily highly persuasive to this Court, they are not binding precedent as are decisions rendered by the Third Circuit.").

Jersey law." 641 F.3d at 31. Specifically, Huertas alleged that the debt collector violated the

FDCPA by sending a letter which

> indicate[d] that Huertas's account ha[d] been reassigned,
> request[ed] that Huertas "call to resolve this issue," include[d] a
> privacy notice informing him that [the creditor] would be accessing
> his private information, and, as required by 15 U.S.C. § 1692g(a),
> indicate[d] that, if Huertas [did] not dispute the debt within thirty
> days of receiving the letter, [the debt collector] [would] assume the
> debt [was] valid. At the bottom, the letter state[d], in bold, capital
> letters, "**THIS IS AN ATTEMPT TO COLLECT A DEBT.**"

641 F.3d at 31, 33. The Court notes that the dunning letter did not provide for a "settlement offer."

In affirming the district court's dismissal of Huertas's FDCPA claim, the Third Circuit first held

that under New Jersey law, a debtor's "debt obligation is not extinguished by the expiration of the

statute of limitations, even though the debt is ultimately unenforceable in a court of law." *Id.* at

32. "In other words, [the debtor] still owes the debt—it is not extinguished as a matter of law—

but he has a complete legal defense against having to pay it." *Id.* Next, having determined that

Huertas still owed the debt, the Third Circuit framed his FDCPA claim as "turn[ing] on whether a

debt collector may attempt to collect upon a time-barred debt without violating the statute." *Id.*

The Third Circuit cited to 15 U.S.C. §§ 1692e(2)(A) and 1692f—the same statutes Plaintiff asserts

here—before addressing the issue. The Third Circuit "agreed" with the "majority of courts" that

> when the expiration of the statute of limitations does not invalidate
> a debt, but merely renders it unenforceable, the FDCPA permits a
> debt collector to seek voluntary repayment of the time-barred debt
> so long as the debt collector does not initiate or threaten legal action
> in connection with its debt collection efforts.

641 F.3d 28, 32-33 (3d Cir. 2011).[5] The Third Circuit held that "Huertas's FDCPA claim hinges

---

[5] In support of this statement, the *Huertas* panel cited numerous cases. *See id.* (comparing *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir.2001) ("[I]n the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that

on whether [the communication from the debt collector] threatened litigation," which in turn "depends on the language of the letter, [and] which should be analyzed from the perspective of the least sophisticated debtor." *Id.* at 33 (citations and internal quotation marks omitted). After reviewing the contents of the letter received by Huertas (which, as noted, did not offer to "settle" Huertas's time-barred debt), the Third Circuit held that "[e]ven the least sophisticated consumer would not understand [the] letter to explicitly or implicitly threaten litigation" and affirmed the district court's dismissal of the FDCPA claim. PRA argues in essence that *Huertas* stands for the proposition that, in the Third Circuit, in order for a debt-collector to be liable under the FDCPA for attempting to collect on a time-barred debt, the communication must implicitly or explicitly threaten legal action, which the PRA Letters do not. (*See* Mov. Br. at 13-17; Reply Br. at 10-13.)

In contrast, Plaintiff acknowledges *Huertas*, but argues that it did not address the gravamen of Plaintiff's claims here: that by not disclosing that the Debt was time-barred, and by offering "settlement," the PRA Letters could mislead or deceive the least sophisticated consumer into believing that the debt was legally enforceable, regardless of whether the creditor threatened litigation. (*See* Compl. ¶ 79; Opp. Br. at 22-35.) In support, Plaintiff points to recent cases from the Seventh and Sixth Circuits, which have taken a more expansive view than *Huertas*. Yet, while

_____

is otherwise valid."), *Wallace v. Capital One Bank*, 168 F.Supp.2d 526, 527–29 (D. Md. 2001) (debt validation notices that were silent as to whether debt was time barred and which did not threaten collection action did not violate FDCPA), and *Shorty v. Capital One Bank*, 90 F.Supp.2d 1330, 1331–33 (D.N.M. 2000) (sending of debt validation notice regarding time-barred debt did not violate the FDCPA), *with Larsen v. JBC Legal Grp., P.C.*, 533 F.Supp.2d 290, 302–03 (E.D.N.Y.2008) (threatening legal action on time-barred debt violated FDCPA), *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 393 (D. Del. 1991) ("[T]he threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate."), and *Kimber v. Fed. Fin. Corp.*, 668 F.Supp. 1480, 1487 (M.D. Ala. 1987) ("[A] debt collector's filing of a lawsuit on a debt that appears to be time-barred, without the debt collector having first determined after a reasonable inquiry that that limitations period has been or should be tolled, is an unfair and unconscionable means of collecting the debt.").)

10

both cases hold that a debt collector violates the FDCPA by misrepresenting the legal enforceability of a debt—*i.e.*, by offering to "settle" a time-barred debt—the Sixth and Seventh Circuits disagree as to the precise contours of *Huertas*.

In *McMahon*, the Seventh Circuit Court of Appeals addressed "the circumstances under which a dunning letter for a time-barred debt could mislead an unsophisticated consumer to believe that the debt is enforceable in court, and thereby violate the [FDCPA]." 744 F.3d at 1012.  The Seventh Circuit analyzed the same statues present in *Huertas* and in this case—namely 15 U.S.C. §§ 1692e and 1692f—and held that "if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable, regardless of whether the letter actually threatens litigation (the requirement the Third and Eighth Circuits added to the mix), the collector has violated the FDCPA." *McMahon*, 744 F.3d at 1020. Based on a "straightforward" application of 15 U.S.C. §1692e, because the letters at issue in *McMahon* offered to "settle" the time-barred debt, the Seventh Circuit found that "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable" and permitted the claims to proceed to discovery. *Id.* at 1020; *see also id.* at 1021 (noting that the Wikipedia entry for "settlement offer" states that the term "offer to settle" is "used in a civil lawsuit to describe a communication from one party to the other suggesting a settlement—an agreement to end the lawsuit before a judgment is rendered.") Significantly, the Seventh Circuit explicitly "recognize[d] that this interpretation"—that a threat of litigation is not necessary to state a claim under the FDCPA when a debt collector offers to settle a time-barred debt—"conflicts with that of the Eighth and Third Circuits." *Id.* (citing *Huertas*, 641 F.3d at 33; *Freyermuth*, 248 F.3d at 771.)

11

In *Buchanan*, the Sixth Circuit reached a result similar to that of Seventh Circuit, but found that *Huertas* had not precisely addressed the issue.  The debt collector in *Buchanan* similarly "made a settlement offer to [plaintiff] to resolve an unpaid debt without disclosing that the statute of limitations had run on the debt." 776 F.3d at 395.  Plaintiff filed suit under the FDCPA, claiming that the letter falsely implied that the debt was legally enforceable.  The Sixth Circuit, analyzing 15 U.S.C. § 1692e, reversed the district court's dismissal of the claim.  According to the panel, "[t]he question is whether [the debt collector's] letter could plausibly mislead a 'reasonable unsophisticated consumer' into thinking her debt is enforceable in court." *Id.* at 398 (citation omitted).  Like the Seventh Circuit, the panel in *Buchanan* answered the question in the affirmative: "When a dunning letter creates confusion about a creditor's right to sue, that is illegal [under 15 U.S.C. § 1692e(2)(A)]. . . . [A] 'settlement offer' with respect to a time-barred debt may falsely imply that payment could be compelled through litigation." *Id.* at 399.[6]  In further mirroring the Seventh Circuit, the *Buchanan* panel noted that "[f]ormal and informal dictionaries alike contain a definition of 'settle' that refers to concluding a lawsuit" and cited to various sources in support.  *Id.*  Unlike the Seventh Circuit, however, the Sixth Circuit distinguished *Huertas* and *Freyermuth*, stating that they

> held only that an attempt to collect a time-barred debt is not a thinly veiled threat to sue. . . . [N]either case addressed the possibility that consumers might still be confused about the enforceability of a debt or the pitfalls of partial payment.  And neither case, most pertinently, featured a letter offering a "settlement."

*Id.* at 399-400.

_____

[6] The panel also reversed on grounds that "whether a letter is misleading raises a question of fact" that was not well-suited for disposition at the motion to dismiss stage, especially considering that the plaintiff had alleged that evidence supported her claim. *Id.* at 397.

12

Thus, the Sixth and Seventh Circuits agree that misrepresenting the legal enforceability of a debt is sufficient to state a claim under the FDCPA, but they disagree as to whether the Third Circuit addressed the issue in *Huertas*.

Nevertheless, case law from the Third Circuit lends further support to Plaintiff's position— that offering to "settle" a time-barred debt is sufficient to state a claim under the FDCPA and that *Huertas* did not foreclose such a result. *See Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 592 (E.D. Pa. 2014); Order, *Funderburk, Jr. v. AFNI, Inc. et al.*, No. 14-6361 (E.D. Pa. Mar. 18, 2015), ECF No. 21 (hereafter "*Funderburk* Order").

In *Johns*, the plaintiff filed suit after receiving a letter from the defendant debt collector which included a "settlement offer" on outstanding, time-barred debt. 76 F.Supp.3d at 592-93. Plaintiff's complaint fell into two categories: first, that the collection on the debt was time-barred under Pennsylvania law, and second, that the letters violated the FDCPA. *Id.* at 595. In dismissing the statute of limitations claim, the district court found that, under *Huertas*, the debt collector "was permitted to seek voluntary repayment of the debt because [the debt collector] did not initiate litigation against Plaintiff nor threaten litigation in the letters." *Id.* at 596. Tellingly, however, in dismissing the FDCPA claims, the district court did not cite to *Huertas*. Instead, the district court found that Plaintiff had failed to plausibly allege that the debt at issue was "debt" as defined within the FDCPA, and that even if she had, the content of the letters did not violate the FDCPA. *Id.* at 597-600 (citing in part *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294 (3d Cir. 2008)). Most relevant to the instant action, the district court held that Plaintiff failed to plausibly allege that the debt collector's use of the term "settlement offer" misrepresented the legal status of the debt, because the argument was "unconvincing" in light of relevant case law. *Id.* at 599-600.

13

The district court reasoned as follows:

> It is well established that "[t]here is nothing improper about making a settlement offer" in communications between a collector and a debtor. *Campuzano–Burgos*, 550 F.3d at 299 (citing *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007)). Forbidding them "would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt—something that is clearly at odds with the language and purpose of the [FDCPA]." *Id.* (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998)). Moreover, "[p]ermitting the use of settlement letters may allow resolution of a claim without the 'needless cost and delay of litigation . . . [and] is certainly less coercive and more protective of the interests of the debtor.'" *Campuzano–Burgos*, 550 F.3d at 299 (quoting *Lewis*, 135 F.3d at 399).

*Id.* at 600.  However, the Court notes that *Campuzano–Burgos* is not entirely on point, because there is no indication that the debt at issue in that case was time-barred.  Accordingly, it appears as though the district court in *Johns* did not specifically analyze the interplay between an offer of "settlement" on a time-barred debt, and instead relied on case law which permits offers of settlement more generally.

Furthermore, in *Funderburk*, the district court issued a three-page order denying the debt-collector's motion for judgment on the pleadings, where the defendant debt collector similarly offered a "settlement" on a time-barred debt.  The court cited *McMahon* and *Buchanan* in support of its finding that the "collection letter could plausibly mislead or deceive the least sophisticated consumer into believing that time-barred debt was legally enforceable." *Funderburk* Order at 2.  The court continued:

> In the instant case, Plaintiffs allege that AFNI's collection letters violate the FDCPA because, by not disclosing that a debt was time-barred, the letters could mislead or deceive the debtor into believing the debt was legally enforceable, *regardless* of whether the creditor was threatening a meritless lawsuit. (*See, e.g.*, Compl. ¶ 69.) The

14

>Huertas Court did not address the viability of such a claim under the
>FDCPA.   Accordingly, I conclude that Plaintiffs have pled a
>plausible claim for relief and I will deny AFNI's Motion.

*Funderburk* Order at 2-3.

>3.   This Court's Position

After reviewing the relevant case law, the Court agrees with Plaintiff.  Despite the Seventh Circuit's indication to the contrary, the Court finds that *Huertas*'s "threat of litigation" requirement does not apply to situations where a debt collector offers to "settle" a time-barred debt, because such facts were not present in *Huertas*, and were not raised by the pro-se appellant.  This Court agrees with the Sixth Circuit that *Huertas* is limited to the proposition that a debt collector may legally request voluntary repayment on a time-barred debt, because such a request is "not a thinly veiled threat to sue." *See Buchanan*, 776 F.3d at 399.  But *Huertas* did not purport to set the outer boundaries for permissible conduct for debt collectors in seeking voluntary repayment of time-barred debts, and the facts before this Court are sufficiently distinguishable to those before the *Huertas* panel.

Keeping in mind that the FDCPA is to be broadly construed, *Caprio, LLC*, 709 at 148, the Court finds that because the plain language of 15 U.S.C. § 1692e(2)(A) specifically prohibits the false representation of the character or legal status of any debt, a misrepresentation about that fact violates the FDCPA, regardless of whether litigation is threatened.  When a debt collector offers to "settle" a time-barred debt, it is plausible that the legal status of the debt has been misrepresented since "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable[.]" *McMahon*, 744 F.3d at 1020; *see also Buchanan*, 776 F.3d at 399 ("[A] 'settlement offer' with respect to a time-barred debt may falsely

imply that payment could be compelled through litigation."); *Funderburk* Order at 2 (a collection letter offering to settle a time-barred debt "could plausibly mislead or deceive the least sophisticated consumer into believing that time-barred debt was legally enforceable"). The Court further agrees with the *McMahon* and *Buchanan* panels that the meaning of the word "settlement" is sufficiently opaque to the least sophisticated debtor for this conclusion to make sense. *See McMahon*, 744 F.3d at 1021 (noting that the Wikipedia entry for "settlement offer" states that the term "offer to settle" is "used in a civil lawsuit to describe a communication from one party to the other suggesting a settlement—an agreement to end the lawsuit before a judgment is rendered."); *Buchanan*, 776 F.3d at 399 (noting that "[f]ormal and informal dictionaries alike contain a definition of 'settle' that refers to concluding a lawsuit" and citing thereto).

Having stated the relevant standard, the Court next addresses the allegations of Plaintiff's Complaint.

### B. Plaintiff Has Plausibly Stated a Claim Sufficient to Survive a Motion to Dismiss With Respect to the 2014 Letter Only; Plaintiff Has Failed to State a Claim With Respect to the 2015 Letter

In this section, the Court addresses the PRA Letters which form the basis of Plaintiff's Complaint. The Court concludes that Plaintiff's FDCPA claim shall proceed to the extent it is premised on the 2014 Letter; on the other hand, allegations stemming from the 2015 Letter fail to plausibly state a claim for relief.

1. The 2014 Letter could be deemed to misrepresent the legal status of the Debt

    *a. There is an issue of fact with respect to the applicable statute of limitations.*

The first issue the Court must address is whether the Debt is governed by a four-year or six-year statute of limitations. Because Plaintiff made her last payment on the Account on August

16

16, 2009 (Compl. ¶ 25), and defaulted sometime in September 2009 (*id.* ¶ 27), determining the applicable statute of limitations is key to whether the 2014 Letter potentially violated the FDCPA. On the one hand, if the six-year limitations period applies, no violation of the FDCPA occurred because the Debt was not time-barred when the 2014 Letter was sent.  But, if the four-year limitations period applies, the Debt was time-barred and the 2014 Letter potentially violated the FDCPA.  Stated differently, it is necessary but not sufficient for the four-year limitations period to apply in order for the Court to then find that the 2014 Letter violated the FDCPA.  Plaintiff contends that the four-year limitations period applies (Opp. Br. at 13-21), while PRA argues that the six-year period applies (Mov. Br. at 9-12; Reply Br. at 4-10).

*N.J.S.A.* 12A:2-725(1) provides a four-year statute of limitations for breach of any contract for sale: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."  *Id.*  Conversely, an action upon a written contract or an account receivable is governed by a six-year statute of limitations under *N.J.S.A.* 2A:14-1:

> Every action at law . . . for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.  This section shall not apply to any action for breach of any contract for sale governed by section 12A:2-725 of the New Jersey Statutes.

*Id.*  In essence, the distinction hinges on whether the Account is an installment contract for the sale of goods versus a loan of money.  *See New Century Fin. Servs., Inc. v. McNamara*, No. A-2556-12T1, 2014 WL 1057076, at *4 (N.J. Super. Ct. App. Div. Mar. 20, 2014); *Gray v. Suttell & Associates*, 123 F. Supp. 3d 1283, 1289-91 (E.D. Wash. 2015).

17

The first question to be answered in determining the applicable statute of limitations is with whom Plaintiff entered into a credit card agreement when she opened the Account: Walmart or GE Bank? *See Gray*, 123 F. Supp. 3d at 1292.  If she entered into an agreement with Walmart, as Plaintiff contends, then it is likely that the four-year limitations period applies.  *Id.* at 1291.  In contrast, if she entered into an agreement GE Bank, as PRA contends, then it is necessary to determine the relationship between GE Bank and Walmart, and whether the credit card can only be used to buy goods from Walmart.  *Id.*  Such a determination is clearly fact-intensive.

The front of the card is branded as Walmart, yet the back of the card states as follows: "Your credit card has been issued, and credit will be extended by GE Money Bank." (*See* Compl. Ex. A.) The back of the card also has a logo for Sam's Club.  Taken together, this seems to suggest that a tripartite relationship exists, such that the six-year limitations period applies, but the Court must next determine the relationship between GE Bank and Walmart, and whether the credit card can only be used to buy goods from Walmart.  *See Gray*, 12 F. Supp. 3d at 1291.  The Court is hesitant to make such a fact-determinative decision prior to discovery, especially because Plaintiff has alleged facts in the Complaint to suggest that the four-year limitations period applies.  (*See* Compl. ¶¶ 14, 19-24, 34, 35 (specifically alleging in part that the Account could only be used to purchase various retail merchandise items and goods from Walmart, could not be used outside of Walmart stores, and could not be used to purchase services).)

Again, at the motion to dismiss stage, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (internal citation and quotation marks omitted).  Whether or not the Court thinks the non-

movant will ultimately prevail is irrelevant. *See U.S. ex rel. Wilkins*, 659 F.3d at 302. Accordingly, given the early state of the litigation, the Court will reserve on this issue and will revisit in due course.

> b. *Assuming at this stage that a four-year limitations period applies, Plaintiff has plausibly stated a claim for relief based on an alleged misrepresentation of the status of the Debt in the 2014 Letter.*

The 2014 Letter includes three "Settlement Options" which purport to offer discounted repayment options, and states that "the savings percentage will be applied to the balance and your account will be considered 'settled in full' once your final payment is successfully posted." (*Id.* ¶ 36; *id.* Ex. B.)

As an initial matter, the Court finds that the 2014 Letter does not state a claim for relief under *Huertas* because the settlement offer contained therein does not amount to a threat of litigation. *See Buchanan*, 776 F.3d at 397 ("Nor does a 'settlement offer' with respect to a time-barred debt by itself amount to a threat of litigation. Even an unsophisticated consumer could not reasonably draw such an inference.").

However, because the 2014 Letter presents "Settlement Options" for Debt that was arguably time-barred, it is plausible that the legal status of the debt has been misrepresented in violation of the FDCPA since "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable[.]" *McMahon*, 744 F.3d at 1020; *see also Buchanan*, 776 F.3d at 399 ("[A] 'settlement offer' with respect to a time-barred debt may falsely imply that payment could be compelled through litigation."); *Funderburk* Order at 2 (a collection letter offering to settle a time-barred debt "could plausibly mislead or deceive the least sophisticated consumer into believing that time-barred debt was legally

enforceable"). In addition, Plaintiff specifically alleges in the Complaint that nothing in the PRA Letters disclosed the legal consequences of a settlement or a payment—in particular that it would restart the statute of limitations, giving he creditor a new opportunity to sue for the full debt. (*Id.* ¶¶ 51, 52.) "Without disclosure [of the legal status of the debt], a well-meaning debtor could inadvertently dig herself into an even deeper hole." *Buchanan*, 776 F.3d at 399; *see also McMahon*, 744 F.3d at 1021 (a collection letter that offers settlement on a time-barred debt "makes things worse, not better, since a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount. That is why those offers [of settlement] only reinforced the misleading impression that the debt was legally enforceable.").

Viewing the allegations in a light most favorable to Plaintiff, and broadly construing the FDCPA, *Caprio, LLC*, 709 at 148, the Court finds that the meaning of the word "settlement" is sufficiently opaque to the least sophisticated debtor for Plaintiff to have plausibly stated a claim. This is especially true when addressing this issue at the motion to dismiss stage and where the Plaintiff points to evidence in the Complaint in support of the claim.[7] As aptly stated by the Sixth Circuit in *Buchanan*,

> whether a [dunning] letter is misleading raises a question of fact. . . . Courts do not lightly reject fact-based claims at the pleading stage. They may do so only after drawing all reasonable inferences form the allegations in the complaint in the plaintiff's favor and only after concluding that, even then, the complaint still fails to allege a plausible theory of relief. . . . [T]he hurdle to proceed from pleading to discovery remains a low one, requiring only that the plaintiff plead a plausible theory of relief.

---

[7] Like the plaintiff in *Buchanan*, Plaintiff here points to a potential expert in the area who could support her claims, in addition to citing to actions undertaken by relevant federal agencies. (*See* Compl. ¶ 43 (citing report of Timothy E. Goldsmith and Natalie Martin); *id.* ¶¶ 39-42 (citing relevant work of the Federal Trade Commission and the Consumer Financial Protection Bureau).)

776 F.3d at 397 (citing Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 677-79); *see also Phillips*, 515 F.3d at 233 (noting that at the motion to dismiss stage the Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.").

Accordingly, to the extent Plaintiff's claim is premised on the "Settlement Options" in the 2014 Letter, such allegations plausibly state a claim for relief because the legal status of the Debt has arguably been misrepresented.[8]

> 2. The 2015 Letter is not in violation of the FDCPA because even the least sophisticated debtor would not understand the 2015 Letter to threaten litigation, or to misrepresent the legal status of the Debt.

PRA concedes that the Debt was time-barred when the 2015 Letter was sent. (*See* Mov. Br. at 14.) However, as explained, this is not in and of itself a violation of the FDCPA. *See Huertas*, 641 F.3d at 33 ("[I]t is appropriate for a debt collector to request voluntary repayment of a time-barred debt[.]") (citation omitted).

First, the 2015 Letter does not violate the FDCPA because it does not threaten litigation. *See Huertas*, 641 F.3d at 32-33. Although the 2015 Letter offers "Single Payment Savings" and states that "your account will be considered 'settled in full' after your payment is successfully posted," crucially, it further states that "[b]ecause of the age of your debt, *we will not sue you for*

---

[8] The Court notes that Plaintiff alleges violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f stemming from the PRA Letters, but it is not clear to the Court how §§ 1692e(5), 1692e(10) or 1692f apply to the facts of this case. As noted, Section 1692f prohibits "unfair practices" and states in part that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Meanwhile, section 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including: falsely representing "the character, amount, or legal status of any debt," *id.* § 1692e(2)(A), "threat[ening] to take any action that cannot legally be taken," *id.* § 1692e(5), or "us[ing] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). To be sure, without discovery, the Court is not currently in a position to rule on the applicability of the various subsections, but simply flags the issue for resolution in due course.

*it*." (Compl. Ex. B (emphasis added).)  Accordingly, the 2015 Letter does not violate the FDCPA because it does not threaten litigation, and, in fact, specifically disclaims litigation. *Huertas*, 641 F.3d at 32-33 ("[T]he FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts.").

For the same reasons, the 2015 Letter does not violate the FDCPA because the least sophisticated debtor would not interpret it misrepresent the legal status of the Debt.  Again, the 2015 Letter offers "Single Payment Savings" as opposed to "settlement options."  Furthermore, even though the 2015 Letter states that "your account will be considered 'settled in full' after your payment is successfully posted," it then states that "[b]ecause of the age of your debt, *we will not sue you for it*."  (Compl. Ex. B (emphasis added).)  Thus, in light of this explicit disclaimer acknowledging that the debt is time-barred, even the least-sophisticated debtor would not believe that the Debt was legally enforceable.  *See Campuzano-Burgos*, 550 F.3d at 299 ("Even the least sophisticated debtor is bound to read collection notices in their entirety."); *Buchanan*, 776 F.3d at 400 ("[I]f a debt collector is unsure about the applicable statute of limitations, 'it would be easy to include general language about that possibility,' *McMahon*, 744 F.3d at 1022, correcting any possible misimpression by unsophisticated consumers without venturing into the realm of legal advice.").

Accordingly, the Court finds that to the extent Plaintiff's FDCPA claim is premised on the 2015 Letter, Plaintiff has failed to state a claim upon which relief can be granted.[9]

---

[9] Plaintiff appears to concede this point, as Plaintiff's opposition does not reference the 2015 Letter at all.

## **CONCLUSION**

For the reasons above, the Court grants in part and denies in part the Motion to Dismiss.

An appropriate Order accompanies this Opinion.

DATED: April 25, 2016

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE